# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,

vs.                                                                                          Case No.

**DAVID JANKOWSKI,**                                              Hon.
Individually, and as a
Member of Maple Garden Associates, LLC,

**MAPLE GARDEN ASSOCIATES, LLC,**
a Michigan limited liability company,

**STEPHEN JANKOWSKI,**
Individually, and as a
Member of Maple Garden Associates, LLC,

**PAULA JANKOWSKI,**
Individually, and as a
Member of Maple Garden Associates, LLC,

**JENNA JANKOWSKI,**
Individually, and as a
Member of Maple Garden Associates, LLC,

**ALEXANDER JANKOWSKI,**
Individually, and as a
Member of Maple Garden Associates, LLC,

    Defendants**.**

___

## COMPLAINT

For its Complaint for Avoidance of Fraudulent Transfers, the United States of America ("United States" or "Government"), by and through its undersigned counsel, alleges as follows:

## JURISDICTION AND VENUE

1. This is a civil action to set aside a fraudulent transfer under *28 U.S.C. §§ 3301-3308* whereby the United States seeks judgment necessary to satisfy in part the criminal restitution debt of Defendant, Dr. David Jankowski.

2. Federal liens securing payment of restitution are the equivalent of Federal tax liens, and under decisional law and applicable statutes, *18 U.S.C. §§ 3613(c)* and *(f)*, may be enforced against the interests of an individual debtor.

3. The Court has jurisdiction under *28 U.S.C. § 1345* because the United States is the Plaintiff, and under *28 U.S.C. § 1355* because proceedings for collection of restitution are equivalent to proceedings for the collection of fines.

4. The Court has jurisdiction over the parties pursuant to *28 U.S.C. §3203;* nationwide service is authorized under *28 U.S.C. § 3202*.

5. Venue is proper under *28 U.S.C. § 1395(a)* because the underlying debt owed to the United States arose from a restitution order issued in this district.

## PARTIES

6. Plaintiff is the United States of America.

7. Defendant Dr. David Jankowski ("Dr. Jankowski") is a criminal restitution debtor pursuant to the judgment ("the Judgment") in the case of *United States of America v. Dr. Jankowski et. al.,* Case No. 2:17-cr-20401. *See Judgment at ECF No. 253*. Dr. Jankowski is currently incarcerated and may be served with process at Federal Correctional Institution Loretto, Reg. No. 55915-039, PO Box 1000, Cresson, PA, 16630 ("FCI Loretto").

8. Defendant Maple Garden Associates, LLC ("MGA") is a limited liability company organized under the laws of the State of Michigan that maintains a registered office at 1010 Bowers, Suite D, Birmingham, MI 48009.

9. Defendant Paula Jankowski ("Paula") is Dr. Jankowski's wife and is a resident of the State of Florida.

10. Defendant Stephen Jankowski ("Stephen") is Dr. Jankowski's son and is a resident of the State of Michigan. Stephen is currently the resident agent of MGA.

11. Defendant Jenna Jankowski ("Jenna") is Dr. Jankowski's daughter and is a resident of the State of Michigan.

12. Defendant Alexander a/k/a Alex Jankowski ("Alex") is Dr. Jankowski's son and is a resident of the State of Michigan.

13. Herein, the term "Defendants" shall refer collectively to Dr. Jankowski, MGA, Paula, Stephen, Jenna, and Alex.

14. All conditions precedent to the bringing of this action have been satisfied or waived.

## **GENERAL ALLEGATIONS**

15. On June 7, 2017, Dr. Jankowski's indictment was unsealed. *United States v. Jankowski*, Case No. 2:17-cr-20401-1, at *ECF No. 1*.

16. On July 11, 2022, Dr. Jankowski was found guilty at trial of (1) conspiracy to distribute and possession with intent to distribute controlled substances, in violation of *21 U.S.C. §§ 841(a)(1)* and *846*; (2) conspiracy to commit health care fraud, in violation of *18 U.S.C. § 1349*; (3) unlawful distribution of controlled substances, in violation of *21 U.S.C. § 841(a)(1)*; and (4) health care fraud, in violation of *18 U.S.C. § 1347*. *Id.*, *ECF No. 178*. The conduct relative to the violations occurred on or about January 2011 and continued until on or about June 2017.

17. Dr. Jankowski was aware he was the subject of a Federal criminal investigation as early as September 2, 2015, when his business partner, Dr. Laran Lerner, pleaded guilty by Information to one count of health care fraud. *See United States v. Lerner*, Case No. 2:15-cr-20511, at *ECF No. 26*. Dr. Jankowski (through affiliated entity, MDS I, LLC) and Dr. Lerner were partners in the limited liability company, Dearborn Real Estate Associates, LLC ("DREA"), the real property company that owned Dr. Jankowski's

medical building on Silvery Lane. *See Exhibit A-DREA Operating Agreement dated February 28, 2014*, at pp. 6 and 24.

18. During the course of the United States' post-judgment investigation of Dr. Jankowski, Dearborn Real Estate Associates, LLC provided a true and accurate copy of the aforementioned DREA Operating Agreement attached as *Exhibit A*.

19. On January 4, 2023, a Preliminary Order of Forfeiture was entered against Dr. Jankowski which included a $35 million forfeiture money judgment. *United States v. Jankowski*, Case No. 2:17-cr-20401-1, at *ECF No. 213*.

20. On April 12, 2023, pending Dr. Jankowski's sentencing, the United States was informed by a non-party buyer that MGA had entered into a contract (referred to herein as the "Purchase Agreement") to sell two properties commonly known as 2101 and 2159 E Maple Road, Birmingham, MI (referred to herein as "the MGA Properties") for $3,715,000.00 (referred to herein as the "Sale"), and that Dr. Jankowski held an interest in this Sale.

21. A true copy of the Purchase Agreement dated December 13, 2022, is attached as *Exhibit B-MGA Purchase Agreement dated December 13, 2022*.

22. Despite completing a Presentence Interview, Dr. Jankowski never provided any information concerning MGA, its assets, or its impending multi-million-dollar sale to the United States.

23. Prior to April 12, 2023, the United States was unaware of Dr. Jankowski's interest in MGA or its assets.

24. On April 26, 2023, Dr. Jankowski was sentenced, and a restitution judgment in the amount for $5.2 million was imposed against him in addition to the $35 million forfeiture money judgment. *United States v. Jankowski*, Case No. 2:17-cr-20401-1, *ECF No. 253, at* PageID. 4698.

25. On April 27, 2023, MGA's counsel provided to the United States MGA's corporate documents which notably indicated that Dr. Jankowski had transferred a majority of ownership interests in MGA (referred to herein as the "Transfers") to Paula, Stephen, Jenna, and Alex (referred to herein as the "Transferees"). *See Exhibit C-April 27, 2023, Email from MGA's Attorney* at pp. 60-64.

26. The United States was not aware of the Transfers prior to April 27, 2023.

27. On May 8, 2023, by stipulation, the United States and the Defendants agreed to entry of an order allowing the Sale to close (referred to herein as the "Stipulation"). *United States v. Jankowski*, Case No. 2:17-cr-20401-1, at *ECF No. 250, at* PageID. 4676. Due to the dispute of the ownership of MGA and the MGA Properties sale proceeds (referred to herein as the "MGA Sale Proceeds"), the MGA Sale Proceeds were deposited with the Clerk of the Court pending further order. *Id*.

28. Dr. Jankowski signed the Stipulation as the "Managing Member" of MGA. *Id.*, at Page ID. 4677.

29. On information and belief, Dr. Jankowski was the managing authority of MGA since its inception, and despite relinquishing his formal title in 2019, he continued to exercise control and management over its affairs through the time when the Sale took place.

30. On information and belief, Dr. Jankowski, or his authorized agents, were the sole individuals with access to, or possession, custody, or control of, MGA's internal corporate documents and records.

31. True and accurate copies of MGA's annual statements filed with the Michigan Department of Licensing and Regulatory Affairs ("LARA") from 2009 to 2023 are attached as *Exhibit D-MGA Annual Statements for years 2009-2023*.

32. On or about May 9, 2023, the Sale took place and Dr. Jankowski's signature was required to close the transaction.

33. MGA Sale Proceeds totaled $2,684,161.45 and were deposited for escrow with the Clerk on or around May 12, 2023.

34. To date, the amount of $672,933.16 has been credited towards Dr. Jankowski's restitution balance, and the amount of $4,530,066.84 remains outstanding.

35. On April 2, 2024, a Final Order of Forfeiture was entered against Dr. Jankowski and imposed a $35 million forfeiture money judgment. *United States v. Jankowski*, Case No. 2:17-cr-20401-1, at *ECF No. 238*.

36. Defendants provided to the United States MGA's federal tax Form K-1's (referred to herein as the "MGA K-1's") for tax years 2015-2022, as truthful and accurate copies of MGA submissions made by MGA to the Internal Revenue Service ("IRS"). *Exhibit E-MGA Tax Form K-1's for tax years 2015-2022*.

37. Each of the MGA K-1's identifies the Transferees' address as 1010 Bowers, Suite D, Birmingham, MI, the same address as MGA. *Id*.

38. As set forth in the 2015 MGA K-1, Dr. Jankowski was the 100% owner of MGA in 2015. *Id*., at p. 2.

39. Consistent with the figures set forth in *Exhibit E*, since January 11, 2016, MGA's equity has been held as follows:

a. Dr. Jankowski: 25%;

b. Paula: 24%;

c. Stephen: 25%;

d. Jenna 13%; and

e. Alex: 13%. *Id*.

40. Defendants provided to the United States, as true and accurate, a copy of MGA's initial operating agreement ("MGA's Operating Agreement") dated January 12, 2006, which is included as pages 6-38 of *Exhibit B*.

41. A true and accurate copy of MGA's articles of organization dated January 12, 2006, as filed with LARA, is attached as *Exhibit F*. *Exhibit F-MGA's Articles of Organization dated January 12, 2006.*

42. On information and belief, Dr. Jankowski held the formal title of "managing member" of MGA from January 12, 2006, until some point in 2019.

43. On information and belief, after relinquishing the formal title of "managing member" in 2019, Dr. Jankowski continued to exercise control and management over MGA's affairs, exemplified by his authority to authorize the Sale and control the execution of the Stipulation.

44. As indicated in MGA's Operating Agreement (*See Exhibit B* at p. 54), MGA was originally owned by Dr. Jankowski and two non-parties.

45. Defendants provided to the United States, as true and accurate, copies of certain assignments executed by non-party members of MGA dated August 31, 2007 (referred to herein as the "MGA Assignments to Dr. Jankowski"). *See Id.,* at pp. 56-57.

46. The MGA Assignments to Dr. Jankowski consolidated ownership making him the sole, 100% owner of MGA as of August 31, 2007.

47. Defendants provided to the United States, as true and accurate, copies of certain certificates of resolutions and assignments dated January 11, 2016 (referred to herein as the "MGA Assignments to Transferees") which are attached to *Exhibit B* at pp. 60-64.

48. The MGA Assignments to Transferees had the effect of transferring 75% of Dr. Jankowski's ownership interest in MGA to the Transferees, thereby changing the ownership structure to that set forth at ¶ 39, above.

49. The documents defined above as MGA's Operating Agreement, MGA Assignments to Dr. Jankowski, and MGA Assignments to Transferees were first provided to the United States on April 27, 2023, as part of *Exhibit B*.

50. Defendants provided to the United States MGA's federal income tax return Schedule B-1's for the years 2016-2022, as true and accurate copies of MGA's submissions to the IRS with its federal income tax returns. *Exhibit G-MGA Tax Schedule B-1's for tax years 2016-2022*.

51. Pursuant to *Exhibit G*, Dr. Jankowski was the 99% owner of the "profit, loss, or capital" in MGA for the years 2016-2022.

52. As indicated in the MGA K-1's attached as *Exhibit E*, none of the Transferees made a capital contribution to MGA during the period of 2015-2022.

53. On information and belief, during the years 2015-2023, none of the Transferees contributed or gave anything of value to MGA in exchange for the Transfers.

54. On information and belief, none of the Transferees have ever paid anything to Dr. Jankowski in exchange for the Transfers.

55. On information and belief, none of the Transferees have ever contributed any amount to MGA in exchange for the Transfers.

**COUNT I-FRAUDULENT TRANSFER UNDER *28 U.S.C. § 3304(b)(1)(A).***

56. The allegations of paragraphs one (1) through (55) are incorporated by reference.

57. The Transferees are Dr. Jankowski's relatives.

58. The Transfers were made to insiders under *28 U.S.C. §§ 3301(5)* and *3304(b)(1)(A)*.

59. After the Transfers, Dr. Jankowski acted as, or exercised the authority of, a managing member of MGA.

60. Even while incarcerated, Dr. Jankowski continued providing instructions and dictates to his family members, employees, and representatives concerning MGA and the MGA Properties, among the many other business interests he maintained.

61. Dr. Jankowski maintained control over all aspects of MGA's day-to-day

business from 2016 through May 8, 2023.

62. Dr. Jankowski retained possession or control of the property transferred after the Transfers under *28 U.S.C. § 3304(b)(1)(B)*.

63. The United States only became aware of the Transfers because a non-party buyer informed the United States that the Sale was pending.

64. Dr. Jankowski did not disclose MGA, its assets, or the Transfers, to the United States prior to April 27, 2023.

65. The Transfers were not properly disclosed to the United States under *28 U.S.C. § 3304(b)(2)(C)*.

66. At the time the Transfers took place, Dr. Jankowski knew or should have known he was under investigation and made the Transfers in anticipation of his future obligations.

67. Before the Transfers were made, Dr. Jankowski had been sued or threatened with suit under *28 U.S.C. § 3304(b)(2)(D)*.

68. The Transfers had the effect of shifting a majority of MGA's assets, and a majority of Dr. Jankowski's interest in MGA, to his family members to avoid the assets being subject to collection by the United States.

69. Dr. Jankowski removed or concealed assets pursuant to *28 U.S.C. § 3304(b)(2)(G)*.

70. The Transferees did not provide anything of value to Dr. Jankowski in

exchange for the Transfers at the time of, or prior to the date of, the Transfers.

71. The Transferees did not provide anything of value to Dr. Jankowski in exchange for the Transfers after the date of the Transfers.

72. The value of any consideration received by Dr. Jankowski from the Transferees in exchange for the Transfers was not reasonably equivalent to the value of the asset transferred under *28 U.S.C. § 3304(b)(2)(H)*.

73. The Transfers were made to protect Dr. Jankowski's assets because he was aware that he would soon be rendered insolvent.

74. Shortly after the Transfers were made, Dr. Jankowski's debts became greater than his assets.

75. Shortly after the Transfers were made, Dr. Jankowski became unable to pay his debts as they became due.

76. Dr. Jankowski was insolvent or became insolvent shortly after the Transfers were made under *28 U.S.C. § 3304(b)(2)(I)*.

77. The Transfers occurred shortly before Dr. Jankowski was indicted.

78. The Transfers were made shortly before a substantial debt was incurred under *28 U.S.C. § 3304(b)(2)(J)*.

79. Dr. Jankowski made the Transfers with actual intent to hinder, delay, or defraud a creditor under *28 U.S.C. § 3304(b)(1)(A)*.

**WHEREFORE**, the Transfers should be deemed to be transfers made with

actual intent to hinder, delay, or defraud a creditor under *28 U.S.C. § 3304(b)(1)(A)*.

## COUNT II-TRANSFEREE LIABILITY UNDER *28 U.S.C. § 3306*

80. The allegations of paragraphs one (1) through (79) are incorporated by reference.

81. The United States did not become aware of a claim as to the Transfers until April 27, 2023, for purposes of *28 U.S.C. § 3306(b)(1)*.

82. The United States could not reasonably have become aware of a claim as to the Transfers until April 27, 2023, for purposes of *28 U.S.C. § 3306(b)(1)*.

83. The Transfers are fraudulent under *28 U.S.C. § 3304(b)(1)(A)*.

84. Under *28 U.S.C § 3306(a)(1)* the United States is entitled to avoidance of the Transfers.

85. Under *28 U.S.C. § 3306(a)(2)-(3)*, the MGA Sale Proceeds in their entirety should be applied to Dr. Jankowski's restitution debt.

**WHEREFORE**, pursuant to *28 U.S.C. § 3306*, the Transfers should be avoided, and the United States should be entitled to apply 100% of the MGA Sale Proceeds to Dr. Jankowski's outstanding restitution balance.

## PRAYER FOR RELIEF

**WHEREFORE** the United States respectfully requests that this Court enter a judgment stating:

1. The Transfers are fraudulent under *28 U.S.C. § 3304*;

2. To the extent the Transfers are avoided, the Clerk of the Court is ordered to apply the MGA Sale Proceeds in their entirety and to the extent necessary to satisfy restitution debt of Dr. Jankowski under *28 U.S.C. § 3306*;

3. Judgment against the Defendants for the value of the Property Transferred; and

4. Any further relief that the Court deems necessary.

    Respectfully submitted,

    DAWN N. ISON
    United States Attorney

    By: */s/Peter F. Schneider*
    PETER F. SCHNEIDER
    Assistant United States Attorney
    211 W. Fort St., Ste. 2001
    Detroit, Michigan 48226
    Phone: (313) 226-9100
    E-mail: peter.schneider@usdoj.gov
    MI Bar Number: P75256

    s/ Jessica A. Nathan
    JESSICA A. NATHAN
    Assistant United States Attorney
    TX Bar 24090291
    211 W. Fort St., Ste. 2100
    Detroit, MI 48226
    T: 313-226-9643
    E: Jessica.Nathan@usdoj.gov