UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

v.

DAVID JANKOWSKI,

   Defendant.

Case No. 24-13422
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING PLAINTIFF'S VOLUNTARY DISMISSAL [30]**

---

In July 2022, David Jankowski was convicted after trial of various criminal offenses stemming from his operation of a pill mill. *United States v. Jankowski*, No. 17-20401 (E.D. Mich. filed May 18, 2023) ("*Jankowski Criminal Case*"). He was not only sentenced to 20 years' incarceration *id.* at ECF No. 253, but also required to disgorge his ill-gotten gains through a $35 million forfeiture money judgment, *id.* at ECF No. 238, and a $5.2 million restitution obligation to Medicare *id.* at ECF No. 253. The government has actively sought to enforce the forfeiture judgment and restitution order through various liens, garnishments, and other collection efforts. This has resulted in numerous civil cases related to Jankowski's many properties and assets.

This case concerns two of those properties—a pair of apartment buildings in Birmingham, Michigan (the "Maple Gardens properties"), held by Maple Garden Associates, LLC, in which Jankowski was once the sole member. After those buildings

were sold (with the government's consent), the government filed this case to protect its interest in the proceeds.[1] But the government no longer needs this action to collect money from the Maple Gardens sale, so it moves to voluntarily dismiss the case. (ECF No. 30.) Jankowski opposes the government's dismissal because he wants to preserve the two counterclaims he has since filed against the government in this case. (ECF No. 34.)

For the reasons that follow, the government's motion to dismiss (ECF No. 30) is granted.

## I.

In 2006, Jankowski created Maple Garden Associates, LLC, to hold and manage two rental properties—the Maple Gardens apartment buildings. (ECF No. 1-7, PageID.239.) A decade later, in January 2016, Jankowski transferred a majority of his interest in that LLC to his wife (Paula) and children (Alex, Jenna, and Stephen), reducing his share of ownership in the LLC to just 25%. (*See* ECF No. 1-4, PageID.91–96.) That transfer occurred shortly after Jankowski's business partner pled guilty to healthcare fraud. (*See* ECF No. 1, PageID.4.) This timing, says the government, was no coincidence, but rather proof that Jankowski sought to hide his assets in anticipation of his own potential charges. (*See id.* at PageID.7.)

---

[1] Citations to the instant docket appear in parentheses throughout this opinion. The underlying criminal case, *United States v. Jankowski*, No. 17-20401 (E.D. Mich. filed May 18, 2023), will be referred to as "*Jankowski Criminal Case*," and the related petition by MGA and Jankowski's family members to release the lien on the Maple Gardens properties, *United States v. Jankowski*, No. 24-50222 (E.D. Mich. filed Mar. 6, 2024), will be referred to as "*Lien Release Petition*."

2

Those charges came to fruition. Jankowski was ultimately indicted, *Jankowski Criminal Case*, No. 17-20401, ECF No. 1, and convicted, *see id.* at ECF No. 253. On April 12, 2023, two weeks before Jankowski's sentencing, the government learned of MGA, LLC (and Jankowski's interest in it) after receiving notice from a third party that MGA had recently entered a purchase agreement to sell the Maple Gardens properties. (ECF No. 1, PageID.5–6.) Upon Jankowski's sentencing, liens automatically attached to his various assets, including the Maple Gardens properties (ECF No. 30, PageID.365). The government, Jankowski, and MGA subsequently agreed to let the Maple Gardens sale close but to deposit the proceeds into an escrow account held by the Clerk of Court until the rightful members of MGA, i.e., those entitled to a share of the proceeds, could be determined. (ECF No. 1, PageID.6); *see also Jankowski Criminal Case*, No. 17-20401, ECF No. 250.

In March 2024, MGA and Jankowski's family members (among others claiming an interest in the Maple Gardens sale) filed a petition to release the lien on the Maple Gardens sale proceeds. *United States v. Jankowski*, No. 24-50222 (E.D. Mich. filed Mar. 6, 2024) ("*Lien Release Petition*"), ECF No. 1. They acknowledged that the government was entitled to recover Jankowski's share of the sale proceeds as a result of his conviction but challenged the government's efforts to also recover their individual shares. *Id.* at PageID.2.

Several months later, in December 2024, the government initiated this suit against the members of MGA, LLC, alleging that Jankowski fraudulently transferred his interest in the LLC to his wife and children. (*See* ECF No. 1, PageID.7.) In other

3

words, it was basically a mirror image of the family members' suit involving the same Maple Gardens proceeds. Jankowski filed an answer and affirmative defenses. (ECF No. 18.) Appended at the end of the affirmative defense are two alleged counterclaims. (*Id.* at PageID.307.) Each three-paragraph counterclaim' contains only one substantive allegation. First, he seeks "restitution for costs and fees to MGA" incurred in fighting the government's allegedly "unlawful retention" of the Maple Gardens sale proceeds. (*Id.*) Second, he claims the government tortiously interfered with his contract rights when it "froze" his "good faith transfer" of interest in MGA to his relatives. (*See id.* at PageID.307–308.)

In the separate case initiated by MGA, this Court issued an order finding that Jankowski's wife, Paula, and two of his children, Alex and Jenna, had no legal interest in the MGA sale funds. *Lien Release Petition*, No. 24-50222, ECF No. 29. Accordingly, the government then dismissed Paula, Alex, and Jenna as defendants in this case. (ECF No. 21.) The Court found, however, that Jankowski's son Stephen had a legitimate interest in MGA and was entitled to 25% of the proceeds from the sale. *Lien Release Petition*, No. 24-50222, ECF No. 48. Thereafter, the government, Stephen, and MGA entered a stipulated agreement in the *Lien Release Petition* case, *see id.* at ECF No. 55, to dismiss Stephen and MGA from this case, and in exchange Stephen and MGA disclaimed any interest in the remaining Maple Gardens sale proceeds. That left David Jankowski as the sole defendant in the current case.

Because the Court has already determined the lawful interest holders in MGA (Jankowski and Stephen), the government sees no need to continue pursuing this

4

case. Stephen has been compensated and the government is entitled to Jankowski's interest. *See, e.g., United States v. Frank*, 8 F.4th 320, 322 (4th Cir. 2021) ("[W]hen the government enforces a restitution order under the MVRA, it stands in the shoes of the defendant himself, acquiring whatever rights . . . he possesses—no less, but also no more.") Indeed, this Court has already ordered the forfeiture of the remaining Maple Gardens sale proceeds held in escrow in partial satisfaction of Jankowski's outstanding forfeiture money judgment. *Jankowski Criminal Case*, No. 17-20401, ECF No. 351. So the government requests dismissal of its claims with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). (ECF No. 30.) It relies on the same rule to ask that Jankowski's counterclaims be dismissed without prejudice (*Id.*)

In opposition, Jankowski argues that his two "counterclaims" are meritorious, properly raised, and should be given a chance to proceed. (ECF No. 34, PageID.387.)

## II.

Generally, a plaintiff does not need a court order to voluntarily dismiss their own complaint. *See* Fed. R. Civ. P. 41(a)(1)(A). Such an order is required, however, where the defendant has served "either an answer or motion for summary judgment," *id.* at (a)(1)(A)(i) and objects to dismissal, *id.* at 41(a)(1)(ii). *See also* Fed. R. Civ. P. 41(a)(2) ("Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.").

If, however, the defendant has "pleaded a counterclaim" and objects to dismissal, the court's discretion to dismiss the case is limited. *See* Fed. R. Civ. P. 41(a)(2). In that case, the court can *only* dismiss plaintiff's claims over defendant's

5

objection if it first determines that defendant's counterclaim "can remain pending for independent adjudication." *Id.* "[B]y its terms Rule 41(a)(2) prohibits voluntary dismissal only where the counterclaim cannot remain pending for independent adjudication, that is, where there is no independent jurisdictional basis for the claim." *J-Rich Clinic, Inc. v. Cosmedic Concepts, Inc.*, Nos. 02-74324/03-71750, 2005 WL 8154355, at *2 (E.D. Mich. Jan. 13, 2005). But "[t]o have any effect under Rule 41(a)(2) . . . the counterclaim must be a proper one." *See* 21 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2362 (3d ed. 1998).

## A.

So the Court begins by considering whether Jankowski has filed "proper" counterclaims. Recall that Jankowski's counterclaims against the United States are for restitution and tortious interference. As an initial matter, restitution is a remedy, not a claim. *See, e.g., Mueller v. FacilityONE Techs., LLC*, No. 21-759, 2023 U.S. Dist. LEXIS 76740, at *14–15 (W.D. Ky. Mar. 22, 2023) ("'Restitution is an equitable remedy that requires a party that has received benefits under an unenforceable agreement [to] return said benefits to avoid unjust enrichment.' Technically, unjust enrichment is the cause of action, and restitution is the remedy."); *Farm Credit Bank v. United States Mineral Prods. Co.*, 864 F.Supp. 643, 647 (W.D. Ky. 1994) ("Restitution is a theory of recovery, not a cause of action."). Thus, Jankowski's request for restitution is not a "proper" counterclaim for Rule 41(a)(2) purposes.

Jankowski's claim of tortious interference with contract fares no better. The United States, as the sovereign, is generally immune from suit. *F.D.I.C. v. Meyer*, 510

6

U.S. 471, 475 (1994). Thus, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Gao v. Jenifer*, 185 F.3d 548, 554 (6th Cir. 1999) (citing *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999)); *see also Meyer*, 510 U.S. at 475. Because sovereign immunity is "jurisdictional in nature," courts may raise it *sua sponte* even when a federal defendant does not. *Meyer*, 510 U.S. at 475; *see also Brown v. Sec'y of the Army*, 78 F.3d 645, 648 (D.C. Cir. 1996) ("Whether the United States has consented to be sued is the sort of jurisdictional question which may be raised at any time, either by the parties or by the court *sua sponte*." (quotation omitted)).

The Federal Tort Claims Act provides for a waiver of sovereign immunity for certain claims for damages arising from the tortious conduct of federal officers or employees acting within the scope of their office or employment. *See* 28 U.S.C. §§ 1346(b)(1). But this does not include claims for tortious interference with contract. *Id.* § 2680(h) ("The provisions of [the FTCA] shall not apply to . . . (h) Any claims arising out of . . . interference with contract rights"); *see also Woda Cooper Cos. v. United States*, No. 20-928, 2021 U.S. Dist. LEXIS 234521, at *4–5 (W.D. Mich. Jan. 26, 2021) (collecting cases). So Jankowski's counterclaim for tortious interference with contract is also not proper. *See, e.g., Gifford v. FBI*, No. 19-10257, 2019 U.S. Dist. LEXIS 39382 at *11 (E.D. Mich. Feb. 11, 2019) ("Unfortunately for Plaintiff . . . claims for 'interference with contract rights' are excepted from the grant of jurisdiction in [the FTCA]. 28 U.S.C. § 2680(h). Therefore, no FTCA claim exists, and because no other basis for jurisdiction is apparent from the complaint, the Court

7

lacks jurisdiction."), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 38309 (E.D. Mich. Mar. 11, 2019).

As such, Jankowski's improper "counterclaims" are not an impediment to the government's request for voluntary dismissal under Rule 41(a)(2).

## B.

The Court now turns to whether dismissal of the government's complaint is nevertheless warranted here. The Court retains discretion to dismiss the plaintiff's complaint on "terms that the court considers proper." *See* Fed. R. Civ. P. 41(a)(2). Dismissals under Rule 41(a)(2) are reviewed for abuse of discretion. *Malibu Media, LLC v. Ricupero*, 705 F. App'x 402, 407 (6th Cir. 2017) (citing *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994)).

The purpose of Rule 41(a)(2) is to protect the nonmovant from "unfair treatment." *Bridgeport Music, Inc. v. Universal-MCA Music Publ'g, Inc.* ("*Bridgeport II*"), 583 F.3d 948, 953 (6th Cir. 2009). In line with the purpose of Rule 41, however, reviewing courts generally deem dismissal improper where the nonmovant would suffer "plain legal prejudice." *Malibu Media, LLC*, 705 F. App'x at 407.

A number of factors have emerged for analyzing whether a defendant would be prejudiced by dismissal. Courts consider: 1) the defendant's effort and expense preparing for trial, 2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, 3) insufficient explanation of why dismissal is needed, 4) and whether a motion for summary judgment has been filed by the defendant. *Id.* at 408; *see also Bridgeport II*, 583 F.3d at 953. That said, these factors are only a guide,

and a trial judge retains discretion to grant a motion to dismiss. *Rosenthal v. Bridgestone/Firestone, Inc.*, 217 F. App'x 498, 502 (6th Cir. 2007).

The Sixth Circuit has made clear that cases in which "plain legal prejudice" would befall the defendant if plaintiff's claims are dismissed are rare. *Pedreira v. Sunrise Children's Servs.*, 79 F.4th 741, 751 (6th Cir. 2023). And rarer still where the plaintiff seeks to dismiss their complaint with prejudice. *See Faulkner v. Martin*, Nos. 23-5447/5451/5453/5454/5455, 2024 U.S. App. LEXIS 5079, at *12 (6th Cir. Feb. 29, 2024) ("By dismissing the claims with prejudice, [Defendants] receive a 'complete adjudication of the issues presented by the pleadings' which forever bars the plaintiffs from prevailing on these claims. . . . [Defendants] have 'not identified any claims or defenses that would be foreclosed by dismissal,' and therefore this is not one of the 'rare cases' in which dismissal with prejudice causes defendants or third parties 'plain legal prejudice.'") (citing *Pedreira*, 79 F.4th at 751).

A balancing of all four factors weighs in favor of dismissing this case. First, Jankowski is *pro se* and has incurred no attorneys' fees in this matter.[2] Nor has the case involved significant discovery or motion practice. There has been no exchange of experts or witness lists, nor have any dispositive motions been filed. (*See* ECF No. 24 (scheduling order).) Nor has Jankowski even needed to be involved. And while he

---

[2] Jankowski argues that he has been defending this case "since 2023" and that he has paid the Chapman Law Group "at least $75,000 in legal fees." (ECF No. 34, PageID.388.) But that cannot be. This case did not start until 2024 and has not involved any attorney for Jankowski. Indeed, Jankowski does not dispute that he is, and has been, "proceeding pro se" in this case. (ECF No. 34, PageID.386–387.) Insofar as Jankowski's legal fees were accumulated in other cases, the Court will not consider those expenses here.

9

believes that merely proceeding *pro se* requires "enormous effort" to "meaningfully prepare," (ECF No. 34, PageID.387), he has not been legally prejudiced as a result.

Second, there has been no "excessive delay" or "lack of diligence" on the part of the government in prosecuting this action. The government recognizes that this case is significantly affected by the related case brought by Jankowski's family members over the same sales proceeds. And they voluntarily dismissed Alex, Paula, and Jenna from this case after this Court found in the related case that they had no legal interest in MGA. (ECF No. 21.) The government then moved quickly to end the entire case following the resolution of Stephen's interest. (ECF No. 29, PageID.358.) So this factor also weighs in favor of dismissal.

Third, the government has provided a sufficient and reasonable explanation for dismissing this case. (*See, e.g.*, ECF No. 30, PageID.366.) Its purpose was to prevent Jankowski from hiding his interest in Maple Gardens by fraudulently transferring it to his relatives. (*See id.*) Because this Court has already determined the MGA, LLC members entitled to a share of the sale proceeds, the question of whether Jankowski fraudulently conveyed his interest in MGA to his wife and children is moot. (*See generally* ECF No. 30); *see also Lien Release Petition*, No. 24-50222, ECF No. 29 ("The Court finds that, with respect to MGA, Paula, Alex, and Jenna Jankowski . . . do not have legal interest in the proceeds from the sale of the Maple Garden apartments."). This is not only a sufficient reason, but a good reason to dismiss the government's claims—no more resources, on the part of the parties or the Court, need be expended to re-litigate already settled issues.

10

Jankowski's contention "that millions of dollars were improperly taken and seized" from him when the government forfeited the Maple Gardens sale proceeds, (*See* ECF No. 34, PageID.387), does not alter this conclusion. This case solely concerns whether Jankowski fraudulently transferred his interest in MGA to his relatives. It has no bearing on the propriety of the government's "seizure" of Maple Gardens proceeds in the first instance.

Fourth, and finally, Jankowski has not filed any summary judgment or other dispositive motions.

### III.

For these reasons, the Court concludes that this is not one of the "rare" cases in which Jankowski would suffer "plain legal prejudice" if the government's claims are dismissed. As such, the motion to voluntarily dismiss pursuant to 41(a)(2) is GRANTED. And the Court will dismiss the entire case because it lacks jurisdiction over the counterclaims. Fed. R. Civ. P. 12(b)(1).

IT IS SO ORDERED.

Dated: October 30, 2025

                                              s/Laurie J. Michelson
                                              LAURIE J. MICHELSON
                                              UNITED STATES DISTRICT JUDGE